UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Mon Cheri Bridals, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 21-CV-5202 |
| Certain Schedule A Defendants, | ) Judge Harry D. Leinenweber |
| Defendants. | ) Magistrate Judge Heather K. McShain |

**DEFENDANTS' MOTION AND INCORPORATED
MEMORANDUM OF LAW FOR FEES AND COSTS**

Pursuant to the schedule set by this Court during the December 2, 2021 Hearing (the "***December Hearing***") Defendants[1] respectfully submit this motion and memorandum (the "***Motion***") for fees and costs.

PROCEDURAL HISTORY

On October 1, 2021, Plaintiff filed under seal a Complaint purporting to allege trademark infringement, copyright infringement and derivative claims of unfair competition and deceptive business practices. Schedule A to the Complaint listed 526 defendants. (Dkt. # 2.) With its Complaint, Plaintiff moved *ex parte* for a temporary restraining order (Dkt. # 7, the "***TRO Motion***"). On October 4, this Court granted, *inter*

---

[1] "Defendants" refers to the stores listed in the appearance (the "Appearance") filed on December 1 (Dkt. # 27) and Does 93 and 146. Does 93 and 146 were not included in the Appearance because they contacted Defendants' counsel after the Appearance was filed, shortly before the December 2 Hearing.

*alia*, Plaintiff's motion to seal its filings and set the TRO Motion for a hearing. (Dkt. # 14).[2] The TRO Motion was granted on October 12 (Dkt. # 18). The TRO was subsequently extended twice (Dkt. # 21, 25), and this Court set the December Hearing.

On December 1, counsel for Defendants filed an appearance on behalf of 94 of the defendant stores. (Dkt. # 27.) Those stores first received notice of this lawsuit in the week prior the hearing, in the midst of the Thanksgiving holiday. As detailed in the attached billing records, notwithstanding the holiday, counsel for Defendants worked diligently in an effort to investigate Plaintiff's claims as much and as quickly as possible before the December Hearing.[3]

About two hours before the December Hearing, counsel received notification through PACER that Plaintiff had voluntarily dismissed the Defendants. (Dkt. # 29). At the December Hearing, Plaintiff attempted to explain the dismissal as an issue of service. (Hearing Tr. at 3-5.) However, as this Court made clear, the fact that counsel for Defendants had appeared effectively obviated the service issue. (*Id.* at 5 ("That . . . seems to me, [to] eliminate[] the need to have to serve them if they acknowledge that they have been served . . . .").)

At the December Hearing, Defendants made clear that Plaintiff's voluntary dismissal did not address the considerable amount of time and effort Defendants had

---

[2] Submitted with the TRO Motion was a Memorandum (Dkt. #10, the "***TRO Br***."), the Declaration of David Gulbransen (the "***Gulbransen Dec***."), the Declaration of Stephen Lang (the "***Lang Dec***.") and the Declaration of Suren Tar Saakov (the "***Tar Saakov Dec***.").

[3] Attached to this Motion are Exhibit 1, the December Hearing transcript and Exhibit 2, PACER search results. Also submitted with this Motion are two Declarations from Defendants' counsel attaching billing and expense records.

2

already expended to investigate the claims in Plaintiff's Complaint and TRO Motion, and that Defendants wanted "vindication." (*Id.* at 11.) In response, this Court ordered a briefing schedule (Dkt. # 33) on Defendants' request for fees and costs.

## FACTUAL BACKGROUND

As Plaintiff alluded to during the December Hearing, Defendants operate online stores on Aliexpress (Hearing Tr. at 11-12), a Chinese online retail platform owned by the Alibaba group. None of the Defendants operates in the United States. As alleged in the Complaint, Defendants reside in "foreign jurisdictions." (Compl. ¶ 2.) Similarly, the TRO moving papers contain multiple assertions about the need for *ex parte* relief because Defendants are Chinese entities. (TRO Br. at 35 ("[T]he Defendants in this case hold most of their assets in China . . . ."); *see also id.* at 42 ("Mon Cheri, however, has good cause to suspect the Defendants are residents of China."); Lang Dec. at ¶ 23 ("Plaintiffs' investigation . . . establishes that Defendants are using the Infringing Websites to sell Counterfeit Products from foreign countries such as China to consumers in the United States and the State of Illinois . . . .").) Plaintiff's primary claims are for Federal trademark and copyright infringement; its remaining claims of unfair competition (Count II) and violation of Illinois Uniform Deceptive Trade Practices Act (Count IV) derive from Plaintiff's Lanham Act claims. (*See also* TRO Br. at 25-28.)

Plaintiff's Complaint should be viewed in conjunction with its TRO Motion, which was filed with the Complaint. Plaintiff's Complaint and TRO Motion should in turn be viewed in the context of a wide-spread, common practice employed by entities such as Plaintiff and its counsel that has been taxing the judicial resources in this District for years, as Judge Blakey noted in 2016:

> Trademark suits against foreign defendants based upon exclusively online sales of allegedly counterfeit products are becoming increasingly common in this district. Courts . . .

3

> regularly enter injunctions and freeze the assets of
> counterfeiters who reside and operate exclusively in China and
> never set foot in Illinois. This case serves as a reminder that
> not every foreign counterfeiter may be sued here . . . .

*Am. Bridal & Prom Indus. Ass'n v. P'ships & Unicorporated Ass'ns Identified on Sch. A*, 192 F. Supp. 3d 924, 926 (N.D. Ill. 2016) (dismissing complaint). The pattern is as follows—a plaintiff purporting to own certain intellectual property rights files a complaint and motion for a temporary restraining order *ex parte*, joining dozens if not hundreds of disparate defendants listed on a Schedule of defendants attached to a complaint and requesting seizure of defendants' assets without notice.[4] Temporary restraining orders are usually entered because defendants rarely appear to contest; those orders are ultimately converted into preliminary injunction orders, again often because defendants rarely appear to contest. As defendants become aware of the lawsuit—usually due to the seizure of their assets—the majority of them default or are forced into settlement.

Plaintiff listed several examples of these Schedule A cases in its TRO Brief, explaining that courts in this District are "regularly" requested to grant asset seizure orders on an *ex parte* basis. (TRO Br. at 37 (listing cases).[5]) The nine cases from this Court Plaintiff identified in the TRO Br. illustrate the pattern perfectly. In those cases, not a single defendant filed a single opposition brief, and no defense counsel entered an appearance. Given the lack of any opposition put forth by the defendants, all nine cases

---

[4] Because the Schedule filed with the Complaint listing the defendants in cases such as this one is so often labeled "Schedule A," these cases will be referred to generally as "Schedule A" cases.

[5] Plaintiff understates the frequency of Schedule A cases. Since 2016, Plaintiff's counsel has filed approximately 50 Schedule A cases for purported trademark infringement in this District. (Ex. 2.)

reached final judgment in well under a year, and nearly all the defendants appear to have defaulted. That the end goal in these types of cases is the extraction of as many settlements as possible was stated by Plaintiff's counsel during the December Hearing. (Hearing Tr. at 12 ("Many of them [defendants] have reached out to us already and have negotiated settlements or are in the process of negotiating settlements, and then go from there.").)

As discussed in the following section, the deficiencies in Plaintiff's Complaint and TRO Motion are legion. Had Defendants had an opportunity to respond to either the Complaint or TRO Motion prior to the December Hearing, Defendants would have raised at least the following: (1) Defendants do not use the trademarks-in-suit, vitiating the Lanham Act and derivative claims; (2) Plaintiff cannot demonstrate that any allegedly infringing activity is within the reach of U.S. copyright laws; (3) Plaintiff has abused the joinder rules to shove Defendants into this case with 430 other defendants without basis and (4) Plaintiff has not demonstrated its entitlement to the extraordinary and drastic remedy of preliminary injunctive relief against these Defendants specifically, resorting instead to vague, sweeping assertions about "defendants" and "counterfeiters" generally. As Defendants stated during the December Hearing, they welcomed the opportunity to defend themselves against Plaintiff's claims. (*See* Hearing Tr. at 11.) However, upon being notified of counsel's appearance on behalf of Defendants, Plaintiff tried to head off the opposition it rightly assumed would be coming[6] by voluntarily dismissing Defendants. The gravamen of this Motion is that Plaintiff and its counsel should not be permitted to skirt any consequences for filing a meritless complaint and TRO Motion.

---

[6] In this year alone, Defendants' counsel has opposed Plaintiff's counsel in two previous Schedule A cases in this District. In the most recent such case, case no. 21-709, Plaintiff joined 1,254 defendants.

5

ARGUMENT

At least three statutes provide the basis for Defendants' Motion: (1) 15 U.S.C. § 1117(a); (2) 17 U.S.C. § 505 and (3) 28 U.S.C. § 1927.

I. THE FEE-SHIFTING PROVISIONS OF THE COPYRIGHT AND LANHAM ACTS APPLY HERE.

The Lanham and Copyright Acts' fee-shifting provisions are recognized exceptions to the general American rule that each party bears its own attorney fees. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34 (1994); *S. Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001). District courts have broad discretion to assess fees and costs as appropriate, *see, e.g., S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, Case No. 11-cv-861-pp, 2019 WL 1320313, at *9 (E.D. Wis. Mar. 22, 2019); and both the Lanham Act and Copyright Act's fee-shifting provisions apply.

As a result of: (1) Plaintiff's dismissal of Defendants from this case and (2) this Court's Order that the TRO has expired (Dkt. # 33), Defendants should be considered the prevailing party for purposes of the relevant fee-shifting provisions. *See, e.g., Eagle Forum v. Phyllis Schlafly's Am. Eagles*, 498 F. Supp. 3d 1024, 1040 (S.D. Ill. 2020) ("A litigant is a 'prevailing party' 'for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'") (citation omitted). In *Estate of Joe Brown v. Arc Music Group*, No. 10 C 7141, 2012 WL 3581443 (N.D. Ill. Aug. 17, 2012) (Leinenweber, J.), this Court was confronted with defendants in a similar procedural posture to Defendants here, and this Court deemed them prevailing parties for purposes of the Copyright Act. In *Joe Brown*, plaintiff initially sued certain defendants alleging, *inter alia*, copyright and trademark infringement, which defendants moved to dismiss. *Joe Brown*, 2012 WL 3581443, at *1. Rather than responding to the motion to dismiss, plaintiff amended the complaint, voluntarily dismissing the copyright

6

claims. *Id.* This Court then granted the motion to dismiss, dismissing all claims with prejudice. *Id.* In evaluating the motion for attorneys' fees under the Copyright Act, this Court determined that the moving defendants were prevailing parties for purposes of fee-shifting under the Copyright Act. *Id.*, at *3-4. The same result should be reached here.

Defendants acknowledge that there has been no dismissal with prejudice, and that there has been no ruling on a dispositive motion. Nonetheless, a determination that Defendants prevailed is warranted because the copyright and trademark claims are manifestly weak and would not have withstood an adversarial challenge. To head off the adversarial challenge Plaintiff's counsel had to know was coming (*see* discussion *supra* at 5, n.6), Plaintiff threw in the proverbial towel. However, as Judge Easterbrook stated clearly in *Riviera Distrib., Inc. v. Jones*, 517 F.3d 926 (7th Cir. 2008): "That this [favorable judgment] came about when [plaintiff] threw in the towel does not make [the accused infringer] less the victor than it would have been had the judge granted summary judgment or a jury returned a verdict in its favor. [Plaintiff] sued; [defendant] won; no more is required." *Id.* at 928.[7]

To allow Plaintiff to circumvent the fee-shifting provisions in the Lanham and Copyright Acts would be manifestly unjust in light of the lack of merit in Plaintiff's claims and the pattern of these types of cases improperly using the courts in this District for an improper purpose. *See Fuller v. Heintz/Candee*, 2008 WL 4821653, at *2 (W.D. Wis.) ("Although I never reached the merits of plaintiff's case, this does not mean he can avoid attorney fees; the question under § 1117(a) is not whether a case was decided on the merits,

---

[7] In *Riviera*, plaintiff filed a Rule 41(a)(1) dismissal as Plaintiff did here. *Id.* at 927. However, plaintiff did so "long after the time for a voluntary dismissal, without prejudice, under Fed.R.Civ.P. 41(a)(1) had passed." *Id.* The District Court dismissed the case with prejudice under Rule 41(a)(2).

but rather whether it 'lacked merit.'") (citation omitted). In *Craig v. Popmatters Media, Inc.*, 448 F. Supp. 3d 844 (N.D. Ill. 2020), plaintiff first filed copyright claims in the Southern District of Illinois. *Id.* at 846. When the defendant in *Popmatters* challenged jurisdiction and venue, the plaintiff voluntarily dismissed the Southern District case and filed the case in this District, at which point defendant moved for fees under the Copyright Act and plaintiff voluntarily dismissed defendant again. *Id.* This Court determined that defendant in *Popmatters* was the prevailing party for purposes of fee-shifting under the Copyright Act because its dismissal of the second case filed in this District, while styled as a dismissal without prejudice, operated as a dismissal with prejudice. *Id.* at 846-47. Exercising its discretion, this Court recognized that plaintiff's decision to "throw in the towel" did not deprive defendant of its rights under the Copyright Act as a prevailing party. *Id.* at 847 (citing *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093 (7th Cir. 2008)). Here, too, this Court should exercise its discretion and not permit Plaintiff to file a Complaint and a TRO Motion, obtain *ex parte* preliminary injunctive relief, and then run away to avoid the consequences of meritless litigation filings.

II.     FEES AND COSTS ARE APPROPRIATE HERE.

Plaintiff's claims for copyright and trademark infringement, as well as its TRO Motion which is premised on Plaintiff's infringement claims, are so without merit that fees under both the Lanham Act and Copyright Act are appropriate here. The trademark claims are perhaps the most egregious, inasmuch as Plaintiff's own submission of Defendants' allegedly "Infringing Websites" show that none of those websites use the trademarks-in-suit as part of a Defendant's storefront.[8] (Dkt. # 12.)

---

[8]     For eight of the Defendants, the webpages Plaintiff filed include images with the name "Sophia Tolli," and one of the trademarks-in-suit is allegedly "Sophia Tolli." The

8

"[T]he Seventh Circuit has determined that the proper standard to be applied in awarding attorney's fees and costs to a prevailing defendant under the Lanham Trademark Act is whether the plaintiff's suit was 'oppressive.'" *S. Indus., Inc. v. Centra 2000, Inc.*, 1998 WL 395161, at *1 (N.D. Ill.). "A suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit." *S. Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001) (citation omitted) (affirming award of fees). This case is oppressive because, based upon Plaintiff's own filings, Plaintiff has not stated an adequate Lanham Act claim and/or demonstrated entitlement to preliminary injunctive relief. *See LHO Chicago River, L.L.C. v. Perillo*, 942 F.3d 384, 388-89 (7th Cir. 2019). Plaintiff's TRO Motion baselessly increased the cost of litigation because, at a minimum: (1) Plaintiff could not demonstrate a likelihood of success against all Defendants that do not use the trademarks-in-suit and (2) its rhetoric about counterfeiting generally does nothing to show that these Defendants specifically counterfeit and therefore should be restrained on an *ex parte* basis.[9]

That Plaintiff is abusing the judicial process is demonstrated primarily by the fact

---

trademarks-in-suit are not used as part of any Defendants' storefront, and these eight defendants do not use the name as a mark. Assuming *arguendo* that images with the name "Sophia Tolli" are subject to any copyright, Plaintiff still has not demonstrated that any alleged copying is within the reach of the U.S. copyright laws, or that Plaintiff is entitled to drastic remedy of *ex parte* injunctive relief.

[9]     For example, the Tar Saakov Dec. includes statements about what "counterfeiters" generally tend to do. (*See, e.g.*, ¶¶ 12-14.) The declaration of Plaintiff's counsel states "*many* of Defendants' names and addresses used to register the infringing websites are incomplete . . . ." (Gulbransen Dec. ¶ 7 (emphasis added).) These vague and generalized statements about "counterfeiters" and unspecified defendants exemplifies the problem of joining disparate defendants into one lawsuit by the hundreds.

9

that its TRO Motion is essentially a pressure tactic designed to extract settlements; Plaintiff admitted as much during the December Hearing. (Hearing Tr. at 12.) Despite Plaintiff's rhetoric about the need to combat alleged counterfeiting and the irreparable harm, Plaintiff has still—nearly two weeks after the expiration of the TRO—not moved for a preliminary injunction. This case is about pressuring as many defendants into settling as possible, regardless of their defenses.

Fees are appropriate with respect to Plaintiff's copyright claims as well. This Court's discretion to award fees under the Copyright Act's fee-shifting provision is guided by two key considerations—"the strength of the prevailing party's case and the amount of damages or other relief the party obtained." *See Moffat v. Academy of Geriatric Physical Therapy*, 2017 WL 4219174, at \*2 (W.D. Wis.) (citation omitted); *see also NLFC, Inc. v. Devcom Mid-America, Inc.*, 1996 WL 18849, at \*1 (N.D. Ill.). For prevailing defendants—like Defendants here—that often do not recover damages, this Circuit recognizes a "'very strong' presumption in favor of receiving attorney fees" because that "very strong" presumption addresses the situation of defendants—again like Defendants here—being forced to enter settlements and abandon meritorious defenses to avoid expensive litigation. *Moffat*, 2017 WL 4219174, at \*2 (citation omitted).

Furthermore, Plaintiff's claim of copyright infringement is fatally flawed in that Plaintiff has not identified any acts supporting copyright infringement that took place in the United States. *See Zimnicki v. Neo-Neon Int'l*, 2009 WL 3805591, at \*3 (N.D. Ill.) ("[T]he Copyright Act 'does not preempt causes of action premised upon possible extraterritorial infringement . . . .'") (citing *Allarcom Pay Tel., Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381 (9th Cir. 1995); *see also Datacarrier S.A. v. Woccu Servs. Group, Inc.*, 221 F. Supp. 3d 1078, 1084 (W.D. Wis. 2016) ("Put simply, . . . infringement that takes place entirely outside of the United States is not actionable."). Here, Plaintiff alleges that all

10

defendants reside in foreign jurisdictions. (Compl. ¶ 2.) In the TRO Br., Plaintiff explicitly stated that "Defendants are liable to Plaintiff for copyright infringement *as a result* of Defendants stealing . . . photographs protected by copyright and republishing them on the infringing website." (TRO Br. at 27.) If Defendants reside in foreign jurisdictions, then the alleged copying or "stealing" necessarily occurred in foreign jurisdictions, outside the reach of the U.S. copyright laws. Plaintiff has not identified any acts underlying the purported copyright infringement claims that occurred within the United States. *See Thane Int'l, Inc. v. 9472541 Canada, Inc.*, 2020 WL 7416171, at *1 (C.D. Cal.) ("The Copyright Act preempts only state law claims based on infringing acts committed entirely within the United States."). Having insisted that Plaintiff should be allowed to proceed in this case *ex parte* because Defendants are foreign entities that could skirt the American legal system (*see, e.g.*, TRO Br. at 35), Plaintiff cannot also insist that Defendants fall within the reach of the copyright laws without explaining what element(s) of copyright infringement occurred in the United States.

Most likely to obscure deficiencies in the Complaint and TRO Motion vis-à-vis specific defendants, Plaintiff has thrown 500+ defendants together, stretching the concept of permissive joinder beyond all recognition. Plaintiff's attempt to assert concerted action or conspiracy should be rejected because it relies on boilerplate language regularly used in Schedule A cases. For example, the Tar Saakov Dec. states at paragraph 11: "The Infringing Websites also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images . . . ." In *Illustrata Servicos Design,*

11

*Ltda. v. P'Ships & Unincorporated Ass'ns Identified on Sch. "A,"* No. 21-CV-05993, 2021 WL 5396690, at *3 (N.D. Ill. Nov. 18, 2021), this Court rejected nearly identical statements in the complaint that "Defendants are 'interrelated' because they share 'other notable common features, including use of the user name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.'" In *Illustrata*, the plaintiff was ordered "to show cause, in writing, as to why the case should not be severed for misjoinder by December 2, 2021." Rather than make that showing, plaintiff in *Illustrata* dismissed the complaint. (Case No. 21-CV-05993, Dkt. # 29.) Plaintiff's improper use of joinder is another factor that this Court should consider because it is yet another example of how unjustified Plaintiff's litigation conduct has been.

The abuse of joinder, common in Schedule A cases, has come under increasing scrutiny in this District for at least two reasons. *See Estee Lauder Cosmetics Ltd. v. P'ships & Unincorporated Assn's Identified on Sch. A*, 334 F.R.D. 182 (N.D. Ill. 2020) (raising *sua sponte* the issue of joinder of 79 defendants); *see also Art Ask Agency v. Individuals, Corps., Ltd. Liability Cos., P'ships, & Unincorporated Assn's Identified on Sch. "A,"* No. 21-cv-06197, 2021 WL 5493226 (N.D. Ill. Nov. 23, 2021) (raising *sua sponte* the issue of joinder of 216 defendants). *First*, it makes it easier for a plaintiff to avoid pleading clear, individualized allegations tailored to the defendants being sued. Instead, as the Plaintiff did here, the allegations against "defendants" as a whole are generalized and sweeping. *See Estee Lauder*, 334 F.R.D. at 187. *Second*, it is an abuse of the judicial process. *See id.* at 186 ("[The] sheer number of defendants waves a joinder red flag and ups the chances that the

12

plaintiff should be paying separate filing fees for separate cases"). In a case where the goal is obtaining as many settlements as possible with the least amount of effort, Plaintiff's abuse of joinder, which has the effect of, *inter alia*, reducing Plaintiff's filing fees, is another consideration weighing in favor of granting this Motion. *See, e.g.*, *NFL Props. LLC v. P'ships & Unincorporated Ass'ns Identified on Sch. "A,"* No. 21-cv-05522, 2021 WL 4963600, at *3 (N.D. Ill. Oct. 26, 2021) (determining that "[b]y suing 228 defendants in a single suit rather than in as many as 228 separate suits, [a plaintiff] may save more than $90,000 in filing fees").

In *Klinger v. Conan Doyle Estate, Ltd.*, 761 F.3d 789 (7th Cir. 2014), Judge Easterbrook recognized how intellectual property can be used as part of a "disreputable business practice". *Id.* at 792 (articulating the "disreputable business practice" of "charg[ing] a modest license fee for which there is no legal basis, in the hope that the 'rational' [accused infringer] . . . will pay it rather than incur a greater cost, in legal expenses, in challenging the legality of the demand"). Parties standing up to defend themselves against this practice, like Defendants, function effectively as "private attorney[s] general" to combat what amounts to "a form of extortion." *Id.* Defendants are not seeking a windfall or reward, but rather to "avoid a loss" in challenging Plaintiff's practice. *Id.* ("In effect he was a private attorney general, combating a disreputable business practice—a form of extortion—and he is seeking by the present motion not to obtain a reward but merely to avoid a loss."); *FM Indus. v. Citicorp Credit Servs.*, 614 F.3d 639-40 (7th Cir. 2010) (Easterbrook, J.) ("A defendant who prevails in copyright litigation vindicates the public's interest in the use of intellectual property, but without an award of fees the prevailing defendant has only losses to show for the litigation."); *see also Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004) (Posner,

13

J.).

III.     THE FEES AND COSTS REQUESTED HERE ARE REASONABLE.

Submitted with this Motion are the time records of Defendants' counsel and the fees and costs requested. The assessment of fees is governed by the "lodestar approach," in which the applicable hourly rates are multiplied by the number of hours reasonably expended. *See Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 872 (7th Cir. 1995); *see also Craig*, 448 F. Supp. 3d at 848-49. This Court may, in its discretion, adjust the amount up or down. The records speak for themselves, and Defendants' counsel will produce any additional support or documentation this Court may order. Defendants' counsel tried to work as efficiently as possible, using non-legal support staff billing at lower rates as much as possible. *See, e.g.*, *Ho v. Taflove*, No. 07C4305, 2010 WL 3313477, at *1 (N.D. Ill. Dec. 20, 2010) (awarding $450 per hour to lead counsel in copyright case). Given the number of Defendants involved and the added difficulty of having to work through what was a holiday weekend for some of Defendants' counsel, the fees and costs requested are reasonable and fair. *See, e.g.*, *Tillman*, 2008 WL 5427744, at *11.

## CONCLUSION

In light of the foregoing, Defendants respectfully request that this Court grant the Motion in its entirety and such other and further relief as this Court deems just and proper.

Dated: December 16, 2021

                                                Certain Schedule A Defendants

                                                By:/s/ Wesley Johnson
                                                    One of their attorneys

Wesley Johnson
Goodman Tovrov Hardy & Johnson LLC
105 W. Madison, Suite 1500
Chicago, IL 60602
(312) 752-4828

Fax: (312) 264-2535
wjohnson@goodtov.com

Case: 1:21-cv-05202 Document #: 40 Filed: 12/16/21 Page 15 of 16 PageID #:8237

**CERTIFICATE OF SERVICE**

    The undersigned, an attorney, certifies that on December 16, 2021, I served a copy of the attached **DEFENDANTS' MOTION AND INCORPORATED MEMORANDUM OF LAW FOR FEES AND COSTS**, on all parties who have appeared via ECF.

<div style="text-align:right">By:/s/ Wesley Johnson</div>