# EXHIBIT 1

1

```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3   MON CHERI BRIDALS, LLC,        )
                                    ) Case No. 21-CV-5202
 4                   Plaintiff,     )
                                    ) STATUS CONFERENCE
 5   vs.                            ) (held telephonically)
                                    )
 6   THE PARTNERSHIPS AND           ) Chicago, Illinois
     UNINCORPORATED ASSOCIATION     ) Date:  December 2, 2021
 7   IDENTIFIED ON SCHEDULE "A",    ) Time:  9:15 a.m.
                                    )
 8                   Defendants.    )
     _____
 9
                     TRANSCRIPT OF STATUS CONFERENCE
10                   HELD TELEPHONICALLY BEFORE
               THE HONORABLE JUDGE HARRY D. LEINENWEBER
11                   UNITED STATES DISTRICT JUDGE
     _____
12
                        A P P E A R A N C E S
13
     For the Plaintiff:       David L. Gulbransen, Jr., Esq.
14                            Law Office Of David Gulbransen
                              805 Lake Street, Suite 172
15                            Oak Park, Illinois  60301
                              312-361-0825
16                            (appeared telephonically)

17   For Certain              Wesley E. Johnson, Esq.
     Defendants               Goodman Tovrov Hardy & Johnson LLC
18   on Schedule A:           105 W. Madison, Suite 1500
                              Chicago, Illinois  60602
19                            312-752-4828
                              (appeared telephonically)
20
     (Appearances continued on the next page)
21

22   COURT REPORTER:          Annette M. Montalvo
                              Official Court Reporter
23                            Office: 312-818-6683

24

25
```

2

```
 1    APPEARANCES:   (Cont'd)

 2

 3    For Defendant          Ruoting Men, Esq.
      Lovful:                Glacier Law PLLC
 4                           200 East Randolph, Suite 5100
                             Chicago, Illinois  60601
 5                           312-270-0413
                             (appeared telephonically)
 6

 7

 8

 9

10    Proceedings reported by machine shorthand, transcript produced
      by computer-aided transcription.
11    _____

12    Court Reporter:        Annette M. Montalvo, CSR, RDR, CRR
                             Official Court Reporter
13                           United States Courthouse, Room 1902
                             219 South Dearborn Street
14                           Chicago, Illinois  60604
                             312-818-6683
15

16

17

18

19

20

21

22

23

24

25
```

1    (Proceedings commenced at 9:17 a.m., in open court, via

2    teleconference, to wit:)

3         THE COURTROOM DEPUTY:  21-C-5202, *Mon Cheri v. The*

4    *Partnerships.*

5         MR. GULBRANSEN:  Good morning, Your Honor.  David

6    Gulbransen on behalf of the plaintiff.

7         MR. JOHNSON:  Good morning, Your Honor.  Wes Johnson

8    on behalf of approximately 100 to 105 of the defendants on

9    Schedule A.

10         MR. MEN:  Good morning, Your Honor.  This is Ruoting

11    Men, appearing on behalf of the defendant 193, Lovful.

12         THE COURT:  All right.  So I guess counsel for the

13    plaintiff, what's the status?

14         MR. GULBRANSEN:  Your Honor, we have had a lot of

15    difficulties getting contact information on the defendants

16    from some of the platforms.  This morning I filed a dismissal

17    for all of the defendants that we have not been able to get

18    contact information for, and, therefore, we can't serve them

19    effectively.

20         For the remaining defendants, I now have information

21    to serve them and intend to serve process today, and then

22    motion up for the preliminary injunction.

23         MR. JOHNSON:  Your Honor, I would like to be heard on

24    that for a moment, if I could.

25         My information --

4

1          THE COURT:  Identify yourself for the --

2          MR. JOHNSON:  My apologies.  This is Wes Johnson, on

3    behalf of a group of defendants.

4          My information, A, my clients were served, and my

5    information from the platforms is the contact information for

6    every defendant is directly on their web page.  At any rate,

7    my clients have appeared.  We filed an appearance on their

8    behalf, and we had to go to great efforts to organize a group

9    of investigators and attorneys to investigate these claims to

10   be ready for this hearing.

11         So, you know, if counsel wants to file a preliminary

12   injunction motion, we'd like to set a briefing schedule for

13   it.

14         MR. GULBRANSEN:  Your Honor, if I may respond to

15   that.

16         I don't believe that any of the -- well, none of the

17   defendants have been served by us.  I don't know what notice

18   the platforms provided them because platforms don't provide me

19   with that information.  However, they have not provided me

20   with any information about the defendants.  I believe that

21   Mr. Johnson's defendants are all with the Alibaba Group, and

22   we dismissed them this morning because we don't have the

23   information for them.

24         Their contact information is not all available on the

25   web site, I believe to the best of my knowledge.  Since we

1    cannot serve them, they were dismissed this morning.

2         THE COURT:  Let me ask this:  If Counsel Johnson

3    files an appearance for them, does that kind of eliminate the

4    need to serve?

5         MR. GULBRANSEN:  Not to my knowledge, Your Honor, it

6    is not a substantive pleading of any kind.  So they were

7    voluntarily dismissed.

8         I spoke with Mr. Johnson this morning, and he was not

9    able to confirm that he would be able to accept process for

10   all of the clients.  As I understand, it is a different time

11   zone in China right now, so I understand his not being able to

12   commit to that.  But because of that, we did already dismiss

13   them.

14        THE COURT:  We've heard the position that they have

15   been served.

16        MR. JOHNSON:  We accept that we have been served, and

17   we filed an appearance.

18        THE COURT:  That kind of, seems to me, eliminates the

19   need to have to serve them if they acknowledge that they have

20   been served, and as an officer of the court, I assume -- well,

21   maybe -- why don't you do this.  We don't we put this off a

22   week and see if you can't figure out where you are on this,

23   and can we agree to extend the TRO for the one week.

24        MR. JOHNSON:  Well, Your Honor, my clients wouldn't

25   voluntarily agree to extend the TRO.  I mean, counsel hasn't

1    asked for that, and I don't know of any reason for it,

2    especially, you know, without filing a motion for extension,

3    and this would be, I believe, a second or third extension, I

4    don't know that TRO rule allows, you know --

5         THE COURT:  You can do anything by agreement.  I was

6    suggesting agreement.  But if not agreement, it certainly

7    would require a motion.

8         MR. JOHNSON:  My client -- I cannot -- I do not have

9    authority to agree to that, Your Honor, as we sit here today.

10        THE COURT:  I am not suggesting you do, and as you

11   point out, plaintiff hasn't requested that either, but my

12   suggestion is, we try to figure out whether there's been

13   service, and usually it's the other way around, the defendant

14   contends that they haven't been served, the plaintiff claims

15   they have been served, and this is the other way around, you

16   on behalf of your client --

17        MR. JOHNSON:  I don't have -- Your Honor, I don't

18   have contact information for any of the plaintiffs.  I have

19   not delivered to the plaintiff any --

20        THE COURT:  I am not suggesting that anybody's not

21   telling me the truth or what the actual situation is.  There

22   seems to be some kind of a variance between how both sides

23   view the situation.  As I said, it is usually the other way

24   around, the plaintiff says, well, we served the defendants,

25   and defendants say they haven't, and now we have defendants

1   saying they have been served --

2           MR. JOHNSON:  Can I address that, Your Honor?

3           THE COURT:  Yes.

4           MR. JOHNSON:  Because that certainly is unusual.

5           First of all, I don't see why plaintiff needs any

6   contact information beyond the contact information he has for

7   me, as I filed an appearance.  But the reason that my clients

8   are anxious to be in this case is because they do not want

9   this hanging over their heads.

10          We assembled in very short order a team of attorneys

11  and investigators to look at this, and our information from

12  interviewing these over a hundred defendants is none of them

13  have infringed a trademark that was asserted in this case, and

14  most -- many of them, a significant number, probably a third

15  to 40 percent, have a statute of limitations defense on the

16  copyright.

17          The remaining claims, we're not conceding any kind of

18  infringement there, and we don't want -- they don't want to

19  live under the threat of this case being filed against them in

20  the future.

21          We would like to resolve this case now because my

22  clients are trying to run a business, and they don't want the

23  threat of this lawsuit over their heads, especially on the

24  basis of inability to serve them, which is rendered moot by

25  the fact that we filed an appearance.

1      MR. MEN:  Your Honor, this is Ruoting Men.  I would

2 like to weigh in on that problem.

3      My client was also sued on copyright infringement,

4 (inaudible) infringing product on these 36 others, which only

5 constitute zero point 1 percent of the entire store sale.

6      And now with this -- Your Honor granted the TRO of

7 October 12, and now the TRO has been lasting for nearly two

8 months.  And my client just can't have this (inaudible) peak

9 season, where my client needs the money from the store to pay

10 its employees and the rent for his company.

11      So we would like to have this case resolved fast,

12 just like what Mr. -- just like what the other defendant

13 attorney said.

14      THE COURT:  Okay.  Well, plaintiff can obviously --

15 you can discuss settlement.

16      MR. JOHNSON:  Your Honor, I agree with what -- I'm

17 not sure of the counsel's name.  This is Wes Johnson, again.

18      But I'm sure you're familiar with these types of

19 cases, Your Honor, these Schedule A cases where counterfeiting

20 has been alleged, and it's been my observation, and I think

21 this is one of those cases, where the extraordinary power that

22 this court has that is unleashed in these kind of cases is now

23 being applied -- the extraordinary power now being applied in

24 ordinary cases.

25      At best, this is a trademark dispute over -- or not a

1   trademark dispute at all, it's a copyright dispute over some

2   images used on the web.  And for that, you know, the

3   plaintiffs have made representations to the Court that have

4   caused this Court to shut down over a hundred businesses.  And

5   the underlying claim here is not strong enough to justify

6   that.  Nor, Your Honor, nor is the claim that all of these

7   defendants should be joined.

8           We don't find any basis for their claims of

9   collaboration between our clients, and our information is

10  they're not collaborating.  They're -- I filed an appearance

11  on behalf of over a hundred defendants.  At least 75 of them

12  are different individuals, a few of them own three or four

13  storefronts, but it is not the case where, you know, one

14  individual company is putting up multiple storefronts in order

15  to evade counterfeiting charges.  I think this is a case where

16  the plaintiff is trying to assert rights that it does not

17  have.  Even under the allegations of the complaint, if my

18  information is correct and there is no trademark infringements

19  that the defendant or the plaintiff is going to be able to

20  show, the defendants are not alleged to have sold counterfeit

21  goods.  And the entire premise of the TRO and the

22  extraordinary damages that the plaintiffs are asking for is

23  based on the idea that these defendants are counterfeiters,

24  and we want to prove that they are not.

25          THE COURT:  Well, except if the plaintiff proves that

1   they are, so they have alleged that they are.

2           MR. JOHNSON:  Right.  And we wish to meet those

3   allegations head on.

4           THE COURT:  All right.  That's why we're here, so

5   that --

6           MR. JOHNSON:  I think --

7           THE COURT:  -- we proceed on an ordinary course,

8   which I assume would be a motion for preliminary injunction.

9   But how do you want to proceed?  If they dismiss all of your

10  clients, then they are out of the case.

11          MR. JOHNSON:  The issue I have with just being

12  dismissed is, I believe that this is a case, if we fully

13  litigated it, where attorneys' fees would be awarded to the

14  defendants.  They never had a basis for dragging all or most

15  of my clients into this case.

16          And if they are dismissing us, then we would like

17  leave to file a petition for attorneys' fees.

18          THE COURT:  Obviously, as I said, I do not have the

19  complete file in front of me at the moment so I am not aware

20  that they dismissed a certain number of defendants.

21          So I am going to ask counsel for the plaintiff, what

22  exactly did you -- can you bring me up to date procedurally,

23  as you see it.

24          MR. GULBRANSEN:  There's approximately 500

25  defendants, Your Honor.  They are all selling wedding dresses

1    that are designed based on my client's designs and using

2    images that they have downloaded from my client's web site and

3    catalog.

4         MR. JOHNSON:  And, Your Honor, I want to address that

5    directly.  They have not alleged that their dress designs have

6    been infringed or that they have a copyright in dress designs.

7    I don't know that they could.  I don't think they could.  But

8    they haven't alleged it.  And this is what I'm talking about

9    as far as these cases being somewhat abusive.

10        They are using these Schedule A cases, this trademark

11   and copyright infringement, to assert rights which they do not

12   have.  They do not have the right to stop our clients from

13   designing dresses the way they want.  They don't have a

14   copyright in their dress designs, but that's how they are

15   trying to use this case, and that is why we want to fight this

16   case.  We want vindication.

17        THE COURT:  All right.  Well, you're entitled to

18   fight it.  So what's the next step then?  Again, as far as you

19   filed suit against -- plaintiff filed suit against 500

20   defendants.  105 are represented by Mr. Johnson.  One by the

21   other gentlemen who's on the line.  So there's 400 other

22   defendants currently, some of which have been served, some of

23   which have not.  Is that the case?

24        MR. GULBRANSEN:  Right, Your Honor.

25        THE COURT:  And you dismissed all of Mr. Johnson's

1   clients; is that right?

2          MR. GULBRANSEN:  I believe so, because I believe they

3   are all on the Alibaba platform, but I can't confirm that.  I

4   would have to go back and see and double-check against his

5   clients.

6          THE COURT:  Let me ask Mr. Johnson and you, counsel,

7   what is your suggestion procedurally, what we should do today?

8          MR. JOHNSON:  Well, Your Honor, if he has dismissed

9   us, then, procedurally, we want to file a petition for

10  attorneys' fees.  We think the reason that he dismissed us is

11  because we appeared.  And we had to do a substantial amount of

12  work to prepare for -- to, you know, assuming our clients were

13  going to have to litigate.  We investigated this.

14         THE COURT:  Well, you're entitled to file it, and

15  then I'll hear from both sides and then rule on it, if you

16  file one.

17         But there's nothing (inaudible) as far as -- let me

18  ask counsel for the plaintiff again, for the 400 or so,

19  which have not been dismissed, what are you going to do with

20  those cases?

21         MR. GULBRANSEN:  Proceed against them, Your Honor.

22  Many of them have reached out to us already and have

23  negotiated settlements or are in the process of negotiating

24  settlements, and then go from there.

25         I mean, I've already -- Mr. Men, who's representing

1    one of the other defendants on this call, has already reached

2    out to us for settlement, we're in settlement negotiations

3    with him.

4                MR. MEN:  Your Honor?  I apologize.

5                THE COURT:  So you are not moving for preliminary

6    injunction?

7                MR. GULBRANSEN:  Yes, I will be later, but I don't

8    have that motion ready to go, Your Honor.

9                THE COURT:  So then there's nothing before me, as

10   Mr. Johnson files a petition for fees, when would you file

11   that?

12               MR. JOHNSON:  Well, I'd like a couple weeks to file

13   it just so we can make sure we've done it.  14 days?

14               THE COURT:  All right.  14 days.

15               And you wish to respond?

16               MR. GULBRANSEN:  Yes, Your Honor.

17               THE COURT:  How much time to respond?

18               MR. GULBRANSEN:  I'm just pulling up the calendar.

19   14 days takes us pretty close to the holidays.

20               THE COURT:  Do you want 21?

21               MR. GULBRANSEN:  Yes, Your Honor, that would be good.

22               THE COURT:  All right.  And then I'll set the matter

23   over for January.  If you want to file anything -- anybody

24   else want to file anything, fine, go ahead.  Otherwise -- give

25   them a January date, Mel.

1        THE COURTROOM DEPUTY:  January 26 at 9:30 a.m.

2        THE COURT:  Thank you.

3        MR. MEN:  Your Honor, this is Ruoting Men, appearing

4   on behalf of defendant 193.

5        THE COURT REPORTER:  Counsel, excuse me --

6     (Short pause; interruption, Court Reporter disconnected from

7   teleconference.)

8        THE COURT REPORTER:  Judge, I was disconnected from

9   the call, right as counsel began to speak.  He'll need to

10  repeat what he said, if he wants it on the record.

11       THE COURT:  Yes, I think so.  The last notation I

12  have before you were dropped from the call was the January 26

13  date, and I said thank you to Mel, to the courtroom deputy.

14  And then Counsel Men started to speak, and you lost contact.

15       THE COURT REPORTER:  Also, if I can have counsel

16  spell his first and last name for me.

17       MR. MEN:  Men.

18       THE COURT:  I am not getting anything.

19       MR. MEN:  Hello?

20       THE COURT:  You were asked to spell your name, and we

21  are waiting for that.

22       MR. MEN:  Men.  M-e-n.

23       THE COURT:  What else?  Anything else?

24       MR. MEN:  No, just that's my last name.

25       THE COURT:  Men, M-e-n?

1       MR. MEN:  Yes, Your Honor.

2       THE COURT:  Okay.  Attorney Men.

3       All right.  So then, well, there's nothing before me

4  this morning, and there will be in January, I will be ruling

5  on the motion for fees.  And anybody -- if the plaintiff wants

6  to file a motion for preliminary injunction, of course, he can

7  do so.  I will rule on it, we will set a schedule, or however

8  we need to do it, and if anybody wants to file anything else,

9  they are free to do so, and we will take it as it comes.

10      Right now there's nothing before me until January.

11  We will rule on this request for fees, on behalf of the 105

12  defendants.  All right?

13      MR. JOHNSON:  Your Honor, this is Mr. Johnson again.

14  I just want to second what counsel said that perhaps the court

15  reporter didn't catch.  Today's order, we would like to

16  reflect that the TRO has expired.  Some platforms will require

17  an order explicitly saying things.  So I want to second his

18  request.

19      MR. GULBRANSEN:  That's fine, Your Honor.  The

20  plaintiff doesn't have any objection to that.

21      THE COURT:  All right.  Let the record show that the

22  TRO has, in fact, expired.  One that has been extended -- was

23  entered on October 12 of this year and extended on October 9

24  of this year until today.  So it expires as of today.

25      Thank you.

16

1          MR. JOHNSON:  Your Honor, sorry.  It's Mr. Johnson

2     again.

3          There is one other matter.  Docket number 12 has been

4     sealed, and I request -- I don't think there's any basis for

5     the continuing sealing of that document, and I request that it

6     be unsealed.  In fact, that contains much of the information

7     that is the basis for the claim, and I'd certainly like to

8     show that there was never any valid claim against our clients.

9          So we request that Docket 12 be unsealed.

10          THE COURT:  Any objection?

11          MR. GULBRANSEN:  No, Your Honor.  No objection.

12          THE COURT:  All right.  Docket 12, the order is

13     unsealed.  All right.  Anything further?

14          MR. GULBRANSEN:  No, Your Honor.

15          THE COURT:  Thank you.

16          MR. JOHNSON:  Thank you.

17     (Proceedings concluded at 9:40 a.m.)

18                         *  *  *  *  *

19                    **REPORTER'S CERTIFICATE**

20          I, ANNETTE M. MONTALVO, do hereby certify that the
       above and foregoing constitutes a true and accurate transcript
21     of my stenographic notes and is a full, true and complete

22     transcript of the proceedings.

23          Dated this 7th day of December, 2021.

24     /s/Annette M. Montalvo
       Annette M. Montalvo, CSR, RDR, CRR
25     Official Court Reporter